NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-552

COMMONWEALTH

vs.

KRISTINA BLACKMORE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury found the defendant guilty of motor vehicle homicide by negligent operation and leaving the scene of a collision after causing injury resulting in death. The defendant claims she is entitled to a new trial because her motion to suppress evidence found inside the truck and her motion to suppress identification should have been allowed. We affirm.

Background. We accept the judge's subsidiary findings of fact absent clear error, otherwise relying on his determination of the weight and credibility given to the testimony. See Commonwealth v. Yesilciman, 406 Mass. 736, 743 (1990), and cases cited. "[W]e give substantial deference to the judge's ultimate

findings and conclusions of law, 'but independently review[] the correctness of the judge's application of constitutional principles to the facts found.'"  Commonwealth v. Eckert, 431 Mass. 591, 593 (2000), quoting Commonwealth v. Magee, 423 Mass. 381, 384 (1996).

For purposes of the defendant's challenge to the order denying her motion to suppress, we recite the facts as found by the motion judge, "supplemented by additional undisputed facts where they do not detract from the judge's ultimate findings." Commonwealth v. Kaplan, 97 Mass. App. Ct. 540, 541 n.3 (2020), quoting Commonwealth v. Jessup, 471 Mass. 121, 127-128 (2015).

On June 9, 2019, the victim was struck and killed on Washington Street in Duxbury when she was hit by a black pickup truck.  After hitting her, the driver of the truck continued driving without stopping.

Prior to the incident, a driver (identifying witness) entered the intersection of Bay Road and Washington Street. When the identifying witness stopped at the stop sign and began to proceed into the intersection, a black pickup truck entered the intersection rapidly from his left, almost hitting his car. The truck continued on Washington Street and then entered the parking lot of a gasoline station.  The identifying witness followed the truck into the parking lot and pulled beside it to admonish the driver.  He walked to within ten feet of the truck

2

and saw that the driver was a white female, approximately 30 to 50 years old, with dark hair that was either short or medium length or being worn up.  Seeing that the driver was female, he decided not to confront her and got back into his vehicle and drove away.

At the scene of the fatal collision, police located broken pieces of a right front headlight that came from a Dodge Ram pickup truck.  Police also learned from another witness that a pickup truck with a female driver had passed that witness on Washington Street on the wrong side of the road while traveling at a high rate of speed shortly before the accident.

A day after the incident, the identifying witness informed the Duxbury police that he had seen reference to the truck in a Duxbury police news bulletin, and he believed he had seen the truck in the area where the accident had occurred.

A police officer recalled that, the year prior to the hit and run, the defendant had been charged with leaving the scene of and accident with property damage while she had been driving a black Dodge Ram pickup truck.  Based on this information, police went to the home of the defendant and there they saw a black Dodge Ram pickup truck parked nose in on the driveway approximately fifty feet from the street.  At the time the police arrived, the defendant and her mother were standing in the driveway beyond the truck.  While walking past the passenger

3

side of the truck, a Massachusetts State police trooper saw damage to the front right headlight, hood, grille, and bumper of the pickup truck.

The defendant asked the officers if they were there because of the accident on Washington Street. The police acknowledged that they were, and when one of the officers looked at the damage to the truck, the defendant said she had damaged the truck the previous evening when she collided with a boat trailer in her driveway. The officer also noticed red-brown stains near the hood of the truck.

Other officers arrived at the home, and one of the cruisers parked behind the truck, blocking it in the driveway. After speaking to the witnesses, the police told the defendant that they intended to seize the truck and have it towed to the Duxbury police station. The owner of the truck, who was the defendant's partner, initially protested but eventually agreed and provided the keys to the truck to the police.

The police did not search the interior of the truck or any item in the truck until they obtained a search warrant. The defendant was allowed to enter the truck and remove a child's car seat. The truck was taken to the police station, and after the warrant was issued, it was searched. This search of the vehicle uncovered the defendant's wallet, containing her license and debit card, remnants of a McDonald's meal in the back seat,

4

and receipts from McDonald's and the gasoline station dated June 9, 2019, and time stamped minutes before the hit and run.

After arresting the defendant, Duxbury police sent out another news bulletin announcing that they had recovered the truck they had been seeking and that the defendant had been arrested. The bulletin included a picture of the defendant. The identifying witness's daughter sent him this picture on his cell phone. He immediately recognized the woman in the picture as the same person he had seen driving the truck on June 9. He never told police he had seen the photograph. He also never told the police he had followed the truck into a parking lot.

Prior to testifying before the grand jury, the identifying witness was shown a photographic array, and he chose the defendant's picture as the person he saw on June 9.

The defendant's motions to suppress evidence of the wallet and receipts and the identifying witness's identification were denied.

Discussion. 1. Seizure of the wallet and papers from the truck. The defendant argues that the police unlawfully seized her wallet which was found inside the truck in the driveway. We do not agree.[1]

---

[1] The defendant does not challenge the police entry onto the property. Nor does she challenge the issuance of the warrant to search the truck or the search pursuant to it.

The judge correctly concluded that the information the police had at the time they encountered the truck provided probable cause to seize the defendant's truck. See Commonwealth v. Donahue, 430 Mass. 710, 711-712 (2000), quoting Commonwealth v. Cinelli, 389 Mass. 197, 213 (1983), cert. denied, 464 U.S. 860 (1983) ("[T]he nexus between the items to be seized and the place to be searched need not be based on direct observation . . . [but] . . . may be found in 'the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [evidence of the crime]'").

The police acted properly in seizing the truck to avoid any loss or destruction of evidence while they obtained the search warrant. "With probable cause, the police may seize property 'to prevent destruction or removal of evidence during the relatively short period of time needed . . . to obtain a search warrant.'" Commonwealth v. Gentile, 437 Mass. 569, 573 (2002), quoting Commonwealth v. Taylor, 426 Mass. 189, 195 (1997). Had the police left the truck at the defendant's home, there was a risk that the defendant or another person could have destroyed the evidence contained within it. "The situation at the time of detention is analogous to the securing of a place to be searched to prevent destruction or removal of evidence during the

relatively short period of time needed by the police to obtain a search warrant." Taylor, 426 Mass. at 195.

Before towing the truck to the police station, there was no necessity for the police to "search" the truck and give the wallet to the defendant. Once police lawfully seize a vehicle based on probable cause, they may assert full control over that vehicle and its contents in order to effectuate an investigative search pursuant to a search warrant. See Commonwealth v. Habarek, 402 Mass. 105, 109 (1988) (police do not have to conduct "immediate inventory search" of seized car suspected of involvement in shooting; "the better policy is to obtain a warrant, when it is practical to do so, even where grounds exist for a warrantless search"); Commonwealth v. Holness, 93 Mass. App. Ct. 368, 372-374 (2018) (police properly denied defendant access to vehicle to retrieve cell phone after they seized vehicle pursuant to probable cause to believe it was involved in shooting).

Here, there was no illegal seizure of the defendant's wallet or the papers found in the truck[2] because their temporary detention by the police occurred while the police diligently pursued a search warrant based on probable cause to search the

_____

[2] There was no evidence at the motion to suppress hearing to support the defendant's contention that the receipts were in the defendant's wallet.

7

truck. See Illinois v. McArthur, 531 U.S. 326, 334 (2001) ("We have found no case in which this Court has held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time").

The motion to suppress the wallet and contents of the truck was properly denied.

2. Identification evidence. Prior to trial, the defendant filed a motion to suppress the identifying witness's pretrial identification of her from the photographic array, which the motion judge denied following an evidentiary hearing. The defendant then objected at trial when the Commonwealth requested that the identifying witness make an in-court identification. The trial judge allowed the in-court identification. On appeal, the defendant challenges both the motion judge's denial of her motion to suppress the pretrial identifications and the trial judge's allowance of the in-court identifications. We address these in turn.

a. Pretrial identifications. "Out-of-court identifications made without police wrongdoing are analyzed under common law principles of fairness." Commonwealth v. McCray, 93 Mass. App. Ct. 835, 841 (2018). "The defendant bears the burden of proving suggestiveness by a preponderance of the evidence." Id. If the defendant meets this burden, the judge

8

is "required to examine the probative value of the identification testimony in light of 'the strength of its source independent of the suggestive circumstances of the identification.'" Commonwealth v. Dew, 478 Mass. 304, 316 (2017), quoting Commonwealth v. Carter, 475 Mass. 512, 518-519 (2016).

The defendant claims that the evidence regarding the identifying witness picking the defendant's picture out of a photographic array and his subsequent trial identification should have been suppressed because the identification was tainted by the police manipulation of social media. We disagree.

Pretrial identifications relying on showups, lineups, and photographic array identifications are somewhat suggestive by their very nature. See, e.g., Commonwealth v. Austin, 421 Mass. 357, 361 (1995); Commonwealth v. Hill, 64 Mass. App. Ct. 131, 133 (2005). The question is whether the procedure was unduly suggestive. See Commonwealth v. Santos, 402 Mass. 775, 781-782 (1988). "[(A)] photographic identification procedure is constitutionally invalid if the procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" Commonwealth v. Alicea, 464 Mass. 837, 847-848 (2013), quoting Commonwealth v. Holland, 410 Mass. 248, 253 (1991). The burden is on the defendant to show,

9

by a preponderance of the evidence, that the identification was so unnecessarily suggestive as to deny the defendant due process.  See Holland, supra.

There is nothing in the record to suggest that the police deliberately tried to taint the identifying witness's identification.  "An accidental confrontation, when the police make no attempt to elicit an improper identification, is permissible."  Commonwealth v. Otsuki, 411 Mass. 218, 234 (1991).  The motion judge found that the police posted the picture of the defendant on social media to keep the public "apprised of the progress of that investigation."  In that context, this "simple exposure to the media is not sufficient ground to suppress an identification."  Commonwealth v. Colon-Cruz, 408 Mass. 533, 542 (1990).

We acknowledge that "in some circumstances[,] an identification that has been tainted, but not by the government, may become so unreliable that its introduction in[] evidence is unfair" (citation omitted) and that a judge may, in his discretion, "exclude severely unreliable identification testimony," similar to his authority to exclude evidence more unfairly prejudicial than probative.  Commonwealth v. Alcide, 472 Mass. 150, 166 (2015), and cases cited; Mass. G. Evid. § 403 (2026).

10

Here, the identifying witness saw the front and side of the defendant's face from within about ten feet away after getting out of his car to confront her.  He then immediately recognized the defendant from the picture his daughter sent him days later and then again when he identified her in the photographic array. We conclude that the motion judge properly exercised his discretion in admitting the identification as reliable based on the identifying witness's original viewing of the defendant at the gasoline station.  The witness had a good opportunity to see the defendant from close range, in circumstances where he had reason to remember her appearance.  Contrast Commonwealth v. Jones, 423 Mass. 99, 104 (1996) (witness's "attention was not directed to [the defendant] in any focus[ed] or meaningful fashion").  Nothing about the evidence of his intervening exposure to the defendant's photograph in the bulletin was so unduly suggestive as to taint his subsequent identification of her in the photographic array.

b.  In-court identification.  Because the defendant objected to the in-court identification, we review for prejudicial error.  See Dew, 478 Mass. at 305.  "Even if otherwise admissible, a judge may suppress identification evidence if 'its probative value is substantially outweighed by the danger of unfair prejudice.'"  Id. at 315, quoting Carter, 475 Mass. at 518.  "[T]he law has long been settled that an in-

11

court identification is excluded if it is tainted by an out-of-court confrontation arranged by the Commonwealth that is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" (quotations and citation omitted).  Alcide, 472 Mass. at 165.

As mentioned supra, the identifying witness's identification was based on a close encounter with the defendant in the gasoline station parking lot.  There was no equivocation in the witness's certainty of recognizing the defendant as the driver he saw at the gasoline station.  We are satisfied that the judge's decision to admit the witness's identification of the defendant at trial did not "fall[] outside the range of reasonable alternatives" and thus was not an abuse of his discretion.  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Judgments affirmed.

By the Court (Massing, Singh & Grant, JJ.[3]),

Clerk

Entered:  July 14, 2026.

---

[3] The panelists are listed in order of seniority.

12